UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

YARELIS GARCIA,

Plaintiff, 11-CV-6468

**DECISION and ORDER**

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

Defendant.

**INTRODUCTION**

Plaintiff, Yarelis Garcia ("Garcia" or "Claimant"), brings this action pursuant to Title II of the Social Security Act ("The Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits. Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") MaryJoan McNamara denying her application for benefits was not supported by substantial evidence in the record and was contrary to applicable legal standards.

The plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision or, in the alternative, remand this case to the Commissioner for reconsideration of the evidence. The Commissioner cross-moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) on the

grounds that the findings of fact of the Commissioner are supported by substantial evidence. This Court finds that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied. Plaintiff's complaint is dismissed with prejudice.

**BACKGROUND**

On April 22, 2010, the plaintiff filed an application for Social Security Disability Insurance ("SSDI") Benefits under Sections 216(I) and 223(a) of the Social Security Act, alleging disability due to chronic lower back pain, with an onset date of December 6, 2008. Transcript of the Administrative Proceedings at 10 (hereinafter "Tr."). The plaintiff's application was denied at the initial and reconsideration levels. Id. The plaintiff timely requested a hearing before an ALJ, and appeared before Judge MaryJoan McNamara with attorney, William McDonald, Jr., on May 11, 2011. Id.

In a Decision dated June 17, 2011, the ALJ determined that the plaintiff was not disabled. Id at 22. The ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner") when the Social Security Appeals Council denied plaintiff's request for review on August 20, 2011. Id at 1. On September 20, 2011, the plaintiff filed this action. Id at 22.

## Discussion

I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits this Court's scope of review to two inquiries: 1) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990)(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings pursuant to Rule 12(c). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

II. Standard for Entitlement to SSDI Benefits

Under the Social Security Act, a disability is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. §423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance); 42 U.S.C. §1382c(a)(3)(A)(concerning SSI payments). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. §§423(d)(2)(A) and 1382c(a)(3)(b).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

In determining whether or not a claimant is disabled, SSA regulations require the ALJ to perform a five-step sequential evaluation. In doing so, the ALJ must determine:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5) if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(i)-(v)(2009).

In the instant case, after determining that the plaintiff met the insured status requirements of the Social Security Act under sections 216(i) and 223, the ALJ performed the required five-step evaluation and determined that: (i) the plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 6, 2008; (ii) the plaintiff's degenerative disc condition in her lumbar spine and trochanter bursitis were "severe" impairment under 20 C.F.R. § 404.1520(c) and 416.920(c);(iii) the plaintiff's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;(iv) the plaintiff was unable to perform any past relevant work as a child care provider; and (v) the plaintiff retained the residual functional capacity ("RFC") to perform light work.

III. <u>The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record</u>.

A. <u>Medical Evidence</u>

According to the record, Claimant's back pain resulted from a car accident that occurred on December 29, 2005. <u>Id.</u> at 414. On January 6, 2006, Claimant saw Dr. James Mark, an orthopaedic

surgeon, who diagnosed her with a "musculoskeletal injury...lower back area" as a result of an automobile accident. Id. at 424. Dr. Mark prescribed Motrin 800 mg, along with the continued use of Vicodin (which was prescribed by a Dr. Hamilton), the use of a lumbosacral corset, and physical therapy. Id. On March 27, 2006, Claimant was diagnosed by Dr. Mark as having "degenerative disc disease with significant herniation at L5-S1," and referred the Claimant to Dr. Holder, a pain specialist, for epidural injections. Id. at 422. Dr. Mark determined Garcia suffered from a temporary partial disability. Id. Dr. Holder saw the Claimant on nine occasions from March 2006 to April 2007 and treated her with epidural injections which were unsuccessful. Claimant was then referred to Dr. Lasser who saw Claimant on June 27, 2006. Dr. Lasser diagnosed Claimant as suffering from mechanical lower back pain with left sciatica, resulting from her 2005 accident. Claimant was then referred back to Dr. Holder for pain management and discography, and continued physical therapy with Dr. Lasser. Id. at 419.

A CT scan on August 2, 2006 revealed that there was a focal tear centrally at L4-L5 and a broad based tear at L5-S1. Id. at 426. On June 4, 2007, Claimant underwent back surgery performed by Dr. Lasser which included L4 and L5 hemilaminectomies, L4-1 and L5-S1 disectomies, and left L4, L5, and S1 nerve root decompression. Id. at 437. The procedure was completed without complication. In a

surgery follow-up with Dr. Lasser, he reported that Claimant was "okay," but "much improved from preop status." Id. at 411. On a follow-up appointment with Dr. Lasser on March 11, 2008, Claimant was noted as "improving." Id. at 410. She had recently fallen, however, and Dr. Lasser noted she had tenderness on her left side. Id. Physical therapy was recommended, as well as a follow up in 8 weeks. Id. Dr. Lasser noted Claimant as having a temporary total disability. Id.

In a note from Claimant's physical therapist dated April 28, 2008, the therapist opined that Claimant's condition was improving. Id. at 428. Claimant continued to demonstrate mild-to-moderate right lateral shift of the trunk and gross sensory loss in the left lower extremity, but did show improvements in overall mobility into the trunk with extension. Id.

On June 10, 2008, Claimant saw Dr. Lasser for a post-surgical checkup. Dr. Lasser noted that Garcia was doing well, indicating that she is more active and receiving physical therapy. Id. at 409. After examining the Claimant, Dr. Lasser observed that she is "ambulatory with good upright posture and normal gait." Id. Dr. Lasser also noted that Claimant would not be able to return to work where she would be required to be on her feet most of the day, but that she could do a sedentary job or light duty work where she would be able to shift positions frequently. According to

Dr. Lasser, her disability at that time was moderate-to-marked, partial.

Claimant saw Dr. Lasser for a follow-up check of her back on July 7, 2009 during which Dr. Lasser observed that while she had not been to see her physical therapist while in Florida and that she was not exercising, Claimant was experiencing some lower back aching, but "not too bad." Id. at 688. Dr. Lasser referred Claimant to physical therapy and determined that Claimant was temporarily moderately partially disabled. On January 12, 2010, Claimant again saw Dr. Lasser for a check up. She was still showing tenderness on her left side, and her range of motion was only painful in the extremes and was referred again for physical therapy. Id. On April 6, 2010, Claimant was due for another check up with Dr. Lasser and observed that she had a marked weakness in her abdominal muscles, as well as in her lower back muscles and that her range of motion was limited. Claimant was to continue with physical therapy. Dr. Lasser evaluated her as suffering from a marked partial disability.

On April 8, 2010, Claimant saw Dr. Pita-Acevedo at Finger Lakes Health Medical for treatment for heartburn, anxiety, back pain, and depression. Id. at 646. Dr. Pita-Acevedo observed that Claimant had a normal gait, as well as full range of motion in her neck, upper extremities, and lower extremities. Id. at 648. On Claimant's November 19, 2010 follow-up appointment with Dr. Pita-

Acevedo, she was again observed to walk with a normal gait, but was limited in movements of her upper right extremities. Id. at 663.

Claimant saw Dr. Andre Johnson, an orthopedic surgeon, on February 8, 2011. Id. at 692. Dr. Johnson's examination revealed that there was no swelling or deformity in Claimant's upper right extremity. Her range of motion in her cervical spine was limited secondary to pain. Additionally, she had discomfort on range of motion of her upper right extremity. X-rays taken of the Claimant's cervical spine were normal without any evidence of degeneration or neural foraminal encroachment. Dr. Johnson recommended physical therapy for her back and neck pain. Id. at 695.

On March 1, 2011, Claimant again saw Dr. Pita-Acevedo. Id. at 669. During her exam of the Claimant, Dr. Pita-Acevedo found that she had full range of motion in her neck, and encouraged her to continue with her physical therapy sessions.

Claimant saw Dr. Lasser twice in May 2011. Id. at 701-703, 705-706. On May 4, Dr. Lasser observed that Claimant had some sensitivity around either side of the midline of the lumbar spine. Her cervical spine showed good range of motion, but she had tenderness and spasms in her neck. She had chronic muscular weakness in her lower back and upper extremities.

Throughout the relevant period, Claimant received several residual functional capacity (RFC) evaluations. Tr. 406, 448, 701-

703. On September 22, 2007, Claimant saw Dr. Sirotenko for a consultation. This evaluation, completed almost two years after her accident, observed that Claimant was able to walk with a normal gait, on her heels and toes, squat full, and without an assistive device. She was also able to change herself for the examination, and independently got on and off of the examination table. She also had full dexterity in her hands and fingers, as well as 5/5 score on bilateral grip strength. Her cervical spine had full flexion, full extension, full lateral flexion bilaterally, full rotary movement bilaterally, no cervical or paracervical pain or spasm, and no trigger points. In the upper extremities, there was a full range of motion in her shoulders bilaterally, full range of motion in her elbows, forearms, and wrists bilaterally, no joint inflammation, effusion, or instability, strength in the proximal and distal muscles was 5/5, and there was no sensory abnormality. Claimant did have some tenderness in the L1-L5 region of her back. Lastly, in her lower extremities Claimant displayed full range of motion in her hips bilaterally, full range of motion in her knees bilaterally, full range of motion in her ankles bilaterally, 4/5 strength in her left lower extremity, and some decreased pinprick sensation over L5-S1. Dr. Sirotenko recommended that Claimant should avoid lifting any object over her head, but would be able to push, pull, and lift objects of a moderate degree of weight on an intermittent basis provided those items are on a waist-high table.

He gave the Claimant a "fair" prognosis, and stated that she would "benefit from activities of a sedentary nature only."

On May 22, 2009, the Claimant saw Dr. Alex Perdomo in Ocoee, Florida for an initial consultation. Id. at 446. Dr. Perdomo observed that Claimant had no difficulty walking, and did not require an assistive device for ambulation. She also sat comfortably during the exam and was able to get on and off of the examination table without any problems. Dr. Perdomo noted that Claimant had a full range of motion in both her upper and lower extremities, but that there was a painful bilateral hip flexion, which caused pain to radiate to her lower back. Claimant was unable to squat due to pain, but was able to stand on her toes and heels, although she complained of lower back pain when performing this exercise. When examining her back, Dr. Perdomo found that there were no deformities, but there was moderate tenderness over the lumbar paraspinal muscles. Claimant did have full range of motion in her cervical spine, although her range of motion in the thoracolumbar spine was significantly decreased. Claimant also completed positive left-sided leg raises in both sitting and supine positions. The RFC from Dr. Perdomo found that: she can stand, walk, and sit for 3 to 4 hours in a, 8-hour workday with normal breaks; she can occasionally lift and carry, but should limit the weight lifting to no more than 20 pounds; she should avoid repetitive bending, stooping, or crouching; she did not require any

assistive device for ambulation; there were no manipulative limitations observed. The limitations and allowed activities in Dr. Perdomo's RFC were consistent with the 2007 RFC from Dr. Sirotenko.

Claimant was initially referred to orthopedic surgeon Dr. Stephen Lasser for care on June 27, 2006. Approximately 5 years later, on May 6, 2011, Dr. Lasser completed an RFC for Claimant in which he diagnosed the Claimant with degenerative disc disease-spinal fusion and that Claimant's prognosis was "good." Id. at 701. According to the RFC, Claimant can never climb, balance, stoop, crouch, kneel, or crawl. Claimant could occasionally climb stairs, reach, push, and pull. She could stand continuously for 10 minutes and for 90 minutes in an 8-hour day; walk continuously for 30 minutes continuously and for 120 minutes in an 8-hour day; and sit continuously for 15 minutes and for 120 minutes in an 8-hour day. Dr. Lasser indicated that Claimant could lift/carry up to 20 pounds at one time and lift/carry less than 10 pounds for 2 to 3 hours per day. Claimant would also need a sit/stand option at her place of employment. Dr. Lasser opined that the Claimant would be likely to miss an average of more than 4 days per month as a result of her impairment or treatment, and that her pain would interfere with her attention and concentration at work. Id. at 702-03.

B. The ALJ's Findings

The ALJ determined that the Claimant had the RFC to do light work as defined by 20 C.F.R. 404.1567(a) and 416.967(a), except the Claimant would need an at-will sit/stand option. The ALJ further stated that Garcia could work in a job where she only occasionally would be required to reach overhead bilaterally, but that she could unlimitedly push or pull; occasionally balance, stoop, kneel, crouch, and crawl; frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The ALJ determined that Garcia had unlimited fine manipulation and feeling, but limited use of her arms for gross manipulation. The ALJ noted and determined that plaintiff suffered no visual, communicative, or environmental limitations, and had no nonexertional limitations that would preclude vocational functioning. Tr. at 14.

The ALJ determined that the Claimant had the residual functional capacity to do work at the "light" physical exertion level. Tr. at 14. According to the Social Security regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The reports from plaintiff's doctors all state that Garcia retains the

capacity to perform the lifting component of "light work." See Tr. 406, 448, 702. As for the walking, standing, and sitting requirements, the doctors also have similar findings. Dr. Perdomo states that the Claimant is able to walk 3-4 hours in an 8 hour day, sit for 3-4 hours in an 8 hour day, and stand for 3-4 hours in an 8 hour day. Id. at 448. Dr. Lasser's opinion was that Claimant can walk 30 minutes continuously and no more than 240 minutes in an 8 hour workday. Id. at 702. Claimant is also able to stand for 10 minutes continuously and no more than 90 minutes in an 8 hour workday. Id. Finally, Dr. Lasser stated that Claimant is able to sit continuously for 15 minutes and for no more than 120 minutes during an 8 hour day. Id.

The RFC as determined by the ALJ appropriately took into consideration all of the above medical opinions. 20 C.F.R. § 416.920(a)(4)(v).In addition to her assessment that the Claimant can do light work as defined by 20 C.F.R. § 404.1567(b), the ALJ stated that Claimant would need an at-will sit/stand option. Id. at 14. Further, the RFC incorporates the opinions of Garcia's doctors, all of whom conclude that Claimant requires a combination of sitting and standing throughout her 8 hour workday.

The ALJ properly relied upon the opinion of the vocational expert, and found that the Claimant could do work as a mail clerk (DOT # 309.687-206), stock checker (DOT # 299.667.014), and ticket seller (DOT # 211.467-030). Id. at 21. Each of these jobs meets the RFC as determined by ALJ McNamara.

C. The Commissioner gave appropriate weight to Dr. Lasser's medical opinion.

Claimant alleges that the ALJ did not give controlling weight to the opinion of her treating physician, Dr. Lasser, but, instead, incorrectly gave greater weight to the opinions of Drs. Perdomo and Sirotenko. Pl. Mem. Of Law at 10-14. According to the Social Security Administration regulations, the ALJ will "always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). As for the evaluation of documents presented by the claimant's treating physician, the ALJ is ordinarily required to give controlling weight to the opinion of a treating physician if it "is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ gave Dr. Lasser's opinion "some but not controlling weight." Tr. 19. In support of her position, ALJ McNamara stated that there was "limited imaging" of plaintiff's alleged area of injury, and "other testing returned normal to mild findings." Id. Moreover, the medical findings of other consulting physicians do not support Dr. Lasser's findings that the Claimant's pain would constantly affect her ability to concentrate. The record reveals that the Claimant is reported as having full range of motion in both her extremities, as well as 5/5 and 4/5 strength in her upper and lower extremities, respectively. Id. at 405-406, 446-448, 639, 647-648, 679, 697. Also, Claimant has displayed coherent

thoughts and intact memory–two aspects which affect her concentration. Id. at 648, 655, 666. In an evaluation that she completed on August 14, 2009, Claimant states that she does not have any trouble following written and spoken instructions, paying attention, or getting along with others. Tr. 315-316.

It is well established that the treating physician’s opinion is not deemed controlling when it is contradicted by other substantial evidence in the record. See, Snell v. Apfel, 177 F. 3d 128, 133 (2nd Cir. 1999); Mongeur v. Heckler, 722 F. 2d 1033, 1039 (2d Cir. 1983). Here, the opinions of Dr. Lasser with regard to the extent of Claimant’s pain and the effects that it could have on her day-to-day life are contradicted by other medical evidence in the record. Accordingly, The ALJ correctly gave his opinions “some, but not controlling” weight.

D. The ALJ properly relied upon the vocational expert’s opinion in determining the Claimant’s RFC.

The ALJ found that there was work that a person with Claimant’s limitations could perform which is available in the national economy. Tr. At 21-22. In making this determination, the ALJ considered Claimant’s age, education, and work experience.

Claimant was found to be 34 years old at the time of the decision, and therefore is a “younger individual” as defined by C.F.R. 20 C.F.R. §1563(c). The ALJ also found that, with having only completed the 9th grade, the Claimant has a limited education. Tr. at 21. 20 C.F.R. §1564(b)(3). Further, the ALJ found that the

transferability of the Claimant's job skills from her past work was not material to the determination of disability. Tr. at 21.

The Commissioner may properly rely on the testimony of a vocational expert in response to a hypothetical question regarding the availability of jobs which could be performed by the claimant and which exist in sufficient numbers in the national economy. See Dumas v. Schweiker, 712 F. 2d 1545, 1553-54 (2d Cir. 1983). The ALJ properly relied upon the testimony of the vocational expert, Dr. Duke, who opined that, based on the RFC of the Claimant, that the Claimant can work as a mail clerk, stock checker, and ticket seller. Id.

E. The ALJ correctly evaluated the Plaintiff's credibility.

After reviewing the entire record, the ALJ properly determined that the Claimant was not disabled under 20 C.F.R. § 404.920. In evaluating the Claimant's case, the ALJ found Garcia's impairments to be "reasonably expected to cause the alleged symptoms; however, the Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [above] residual functional capacity assessment." Id. at 15. In discounting the Claimant's testimony, the ALJ relied upon Garcia's work after her accident, that she continued with normal activities of daily living after her accident, and that imaging findings supporting her statements were minor. Because her RFC incorporated Garcia's

limitations (specifically to her right upper extremity, lower back, and left leg pain) that were supported by the record, the ALJ gave limited weight to the Claimant's subjective complaints.

It is well established that a Claimant's subjective testimony about her impairments, alone, is not enough to find the Claimant disabled. 42 U.S.C. § 423(d)(1)(A). There must be medical findings to support the symptoms alleged by the Claimant and, considered together, demonstrate that the Claimant is disabled. 20 C.F.R. § 404.1529(a).

The ALJ noted that the Claimant's statements about her activities do not support her claim of a complete inability to work. Tr. 52-53. Claimant stated that she was unable to work between the relevant period (December 6, 2008-June 17, 2011), but testified that she performed childcare for between 40 and 60 hours per week in 2009 and 2010. Id. at 17, 40-42. Claimant states that this employment did not meet substantial gainful activity. Tr. 17. The ALJ used these records to conclude that the limitations alleged by the Claimant were not severe enough to stop her from working–even in a limited capacity–as a child care provider. Id. Further supporting her ability to work is testimony that the Claimant was able to care for her personal needs. Claimant stated that she remembered to take her medicine, managed her finances, prepared meals, helped her children with their schoolwork, performed household chores with assistance, dressed herself without assistance, was able to shop in stores, and watched television

daily. Id. at 53-56, 61, 310-313. Moreover, medical evidence in the record does not support the Claimant's statements that she is totally disabled. Id. 448, 639, 647, 663, 679, 697, 705. Her ability to both work and complete household tasks supports the ALJ's findings that her subjective complaints were not supported by the evidence.

**CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Claimant benefits was supported by substantial evidence in the record. Therefore, I grant the Commissioner's motion for judgment on the pleadings. The Plaintiff's motion is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: June 22, 2012
Rochester, New York